IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| METASWITCH NETWORKS LTD. | § | |
| | § | |
| v. | § | Case No. 2:14-cv-744-JRG-RSP |
| | § | |
| GENBAND US LLC, ET AL. | § | |

## ORDER ON MOTIONS *IN LIMINE*

Before the Court are Motions *in Limine* filed by Plaintiff Metaswitch Networks Ltd. ("Metaswitch") (Dkt. No. 199) and by Defendant Genband US LLC ("Genband") (Dkt. No. 200). The Court held an initial pretrial conference February 22, 2016 and heard oral arguments on these motions. The parties also filed Agreed Motions *in Limine* (Dkt. No. 264) and two Status Updates Regarding Motions *in Limine* (Dkt. Nos. 271, 280) identifying additional agreements.

To the extent a motion in limine is granted, a party must approach the bench before introducing evidence or argument about the covered subject matter.

## I. MOTIONS IN LIMINE

### A. Agreed Motions *in Limine* (Dkt. 264, 271)

The following Motions are **GRANTED AS AGREED**:

**Agreed Motion in Limine No. 1**: No party will offer evidence, opinion, or argument that relates to or invokes claim construction issues or otherwise undermines or collaterally attacks the Court's claim constructions.

**Agreed Motion in Limine No. 2**: No party will offer evidence, opinion, or argument that relates to rejected claim construction positions, including attorney argument during the Markman hearing.

**Agreed Motion in Limine No. 3**: No party will offer testimony, opinion, or argument that relates

to jury consultants, shadow juries, or focus groups before or during trial.

**Agreed Motion in Limine No. 4**: No party will refer to objections made to the portions of deposition testimony played at trial.

**Agreed Motion in Limine No. 5**: No party will offer evidence or suggest that any asserted claims are indefinite under 35 U.S.C. § 112 or unpatentable under 35 U.S.C. § 101.

**Agreed Motion in Limine No. 7**[1]: No party will offer criticism of the performance, reliability or credibility of the USPTO or the examiners that work at the USPTO, refer to the existence of any "backlog" at the USPTO, refer to the issuance of "bad patents," or offer other similar evidence or remarks. A party is not precluded from introducing evidence that a particular prior art reference was or was not considered during the prosecution of an asserted patent.

**Agreed Motion in Limine No. 8**: No party will refer to the fact that patents or claims have been dropped or dismissed prior to trial, including any claims voluntarily withdrawn by any party or dismissed by the Court on summary judgment.

**Agreed Motion in Limine No. 9**: No party will introduce any motion or Court order as evidence, along with any references that either party won or lost a motion. To be clear, this agreed motion in limine does not seek to preclude arguments and opinions by the parties and their experts that the asserted claims are or are not infringed or invalid under the Court's claim construction ruling, as

---

[1] Agreed Motion in Limine No. 6 is intentionally excluded from this Order. The parties' agreed filing indicates this Motion was "withdrawn." (Dkt. No. 264-1 at 2).

such references to the Court's claim construction ruling are plainly permissible (to the extent such arguments and opinions are not otherwise precluded pursuant to any *Daubert* motion or motion in limine).

**Agreed Motion in Limine No. 10**: No party will offer evidence and arguments referencing the existence of claims by or between the parties that are not a part of *Metaswitch Networks Ltd., et al. v. Genband USA LLC, et al.*, Case No. 2:14-cv-744-JRG-RSP ("the -744 action"), including references to the existence of related action *Genband U.S. LLC v. Metaswitch Networks, Ltd.*, et al., Case No. 2:14-cv-33 ("the -33 action"). To be clear, this agreed motion in limine does not seek to preclude either party from offering discovery produced in either case, including documents, deposition testimony, and trial testimony on the basis that those were produced in another case. With respect to prior trial testimony, the testimony may be referred to as "testimony," "previous testimony," "prior testimony," and the like, but may not reference "trial" or the -33 action by name.

**Agreed Motion in Limine No. 11**: No party will refer to the fact that a party's expert witness was previously considered for retention by, was retained by, or is currently retained by the opposing party's counsel. In other words, the only affiliation between a party's counsel and an expert witness that may be referred to is the expert witness's current affiliation as a testifying expert witness for a party in this litigation.

**Agreed Motion in Limine No. 12**: Exclude any argument, testimony, evidence, or reference to the fact that testimony or opinions offered by any expert may have been excluded in this lawsuit or in

any other lawsuits.

**Agreed Motion in Limine No. 13**: Exclude any argument, testimony, evidence, or suggestion that a damage award in this case (or damage awards generally) may drive up the price of products, put manufacturers out of business, or cause jobs to be lost.

**Agreed Motion in Limine No. 14**: The parties will refrain from referring to each other as a "patent troll," "pirate," "bounty hunter," "privateer," "bandit," "patent assertion entity," "a company that doesn't make anything," or "a company that doesn't sell anything"; referring to any asserted patent as a "submarine patent" or "paper patent"; or refer to this litigation as a "stick up," "hold up," shakedown," or "playing the lawsuit lottery."

**Agreed Motion in Limine No. 15**: Exclude any argument, testimony, evidence, or suggestion that practicing a party's own patent or patent application is a defense to infringement.

**Agreed Motion in Limine No. 16**: Exclude references to the type or character of the legal practice of all law firms representing parties in this case or to the number of attorneys, number of offices, location of offices, revenues, profits, or the number, nature or identity of other clients of the law firms.

**Agreed Motion in Limine No. 17**: Exclude any argument, testimony, evidence, or reference to discovery disputes, the timeliness of disclosures or productions, as well as suggestions that a party was withholding or preventing access to source code despite being in compliance with the

protective order. For the avoidance of doubt, this does not prevent an expert testifying that the source code he reviewed was produced by the opposing party on a source code computer or in source code printouts, or prevent an expert from explaining that they supplemented their report to address additional information or evidence provided no reference is made to the timeliness of any production.

**Agreed Motion in Limine No. 18**: Consistent with the Court's ruling in the related -33 action on Genband's MIL No. 21, evidence and argument relevant only to equitable issues is precluded in the presence of the jury absent agreement of counsel. This agreement is based on the parties understanding that the Court will be addressing equitable claims and defenses at a hearing to be scheduled after the trial in the matter.

**Agreed Motion in Limine No. 19**: No testimony regarding Brendon Mills' employment or interactions with Carrius Technologies/AppTrigger/Metaswitch after leaving Genband, or the cease-and-desist letter sent by Genband.

**Agreed Motion in Limine No. 20**: No argument, testimony, evidence, or reference to alleged copying of a practicing product as evidence of copying an asserted patent unless the proponent of the copying evidence has shown that the alleged copying bears some nexus to an asserted claim (e.g., by submitting evidence at trial that the practicing product practices at least one asserted claim) (*see* -33 Case, Dkt. No. 436)) before offering evidence of the alleged copying. For the avoidance of doubt, this MIL only applies to arguments, testimony, evidence, and references to copying based on alleged copying of a practicing product.

**Agreed Motion *in Limine* No. 21**: Exclude any argument, testimony, evidence, or reference to any reexamination petition, *inter partes* review petition, or other post-grant review proceedings before the U.S. Patent & Trademark Office.

**Agreed Motion *in Limine* No. 22:** Exclude any testimony or opinion that the QUANTiX QFlex eSBC product allegedly infringes the '640 Patent.

**B. Metaswitch's Motions *in Limine* (Dkt. 199)**

**Motion in Limine No. 1**: Exclude any testimony or reference to non-expert opinions relating to issues of infringement, validity, claim construction, or standard essentiality of any patent.

    **GRANTED-IN-PART**, with respect to Mr. David Smith only. If Mr. Smith testifies live, Genband may not elicit his opinion on issues of infringement, validity, claim construction, or standard essentiality of any patent. However, if the evidence shows that Mr. Smith communicated to Genband his belief(s) as to the infringement, validity, or standard essentiality of a patent, Genband may approach the bench and request leave to examine Mr. Smith about such belief(s).

**Motion in Limine No. 2**: Preclude any expert from opining both that a product does not practice a given patent claim and that the same product, or one that the expert opines is materially similar, practices the same patent claim.

    **GRANTED** as set forth in Part II, *infra*.

**Motion in Limine No. 3**: Exclude any argument, testimony, evidence, or suggestion comparing the prior art to infringement contentions instead of the asserted patent claims.

**GRANTED** as set forth in Part II, infra.

**Motion in Limine No. 4**: Exclude any argument, testimony, evidence, or suggestion that a party does not infringe because it "practices the prior art."

**GRANTED** as set forth in Part II, infra.

**Motion in Limine No. 5**: Exclude any argument, testimony, evidence, or reference to alleged copying by Metaswitch.

Metaswitch's motion *in limine* no. 5 is **WITHDRAWN** by agreement of the parties and substituted with Agreed Motion *in Limine* No. 20, *supra*. (Dkt. No. 271 at 2).

**Motion in Limine No. 6**: Exclude any argument, testimony, evidence, or reference to the fact that a Metaswitch employee was formerly employed by Genband or its predecessors, including Nortel.

**GRANTED-IN-PART**. Parties may make factual statements about prior employment history. Parties may not argue or imply that Metaswitch hired someone formerly employed by Genband or its predecessors for a nefarious purpose or to gain an unfair advantage. Reciprocally, parties may not argue or imply that Genband hired someone formerly employed by Metaswitch or its predecessors for a nefarious purpose or to gain an unfair advantage.

**Motion in Limine No. 7**: Exclude any argument, testimony, evidence, or suggestion that any document or evidence was obtained improperly.

**DENIED**. The Court will address the admissibility of specific evidence on an individual basis.

**Motion in Limine No. 8**: Exclude any argument, testimony, evidence, or suggestion that Metaswitch or any officer, employee, or consultant, violated or infringed any intellectual property not asserted in this case or breached or induced breach of any contract.

**GRANTED**.

**Motion in Limine No. 9**: Exclude any argument, testimony, evidence, or reference to prior art or prior art combinations that were not included in invalidity contentions or elected. This would not preclude prior art or combinations later added pursuant to a successful motion to amend invalidity contentions.

**GRANTED**.

**Motion in Limine No. 10**: Exclude any argument, testimony, evidence, or reference to any pending reexamination petition, inter partes review petition, or other post-grant review proceedings before the U.S. Patent & Trademark Office that have been instituted. This motion does not preclude reference to post-grant review petitions where the PTAB denied institution of review.

Metaswitch's motion *in limine* no. 10 is **WITHDRAWN** by agreement of the parties, and substituted with Agreed Motion *in Limine* No. 21, *supra*. (Dkt. No. 280).

**Motion in Limine No. 11**: Exclude any argument, testimony, evidence, or reference to the non-arms-length $1.00 license relating to the '273 patent.

Metaswitch's motion *in limine* no. 11 is **WITHDRAWN** by agreement of the parties. (Dkt.

No. 271 at 1).

**Motion in Limine No. 12**: Exclude use of the terms "reverse engineering" and "stealth mode."

**DENIED**.

**Motion in Limine No. 13**: Exclude any argument, testimony, evidence, or suggestion comparing a preferred embodiment of the asserted patents to the accused products.

At the Pretrial Conference, Metaswitch submitted the following proposed compromise, which the Court **GRANTS**:

No party may argue that the claims are limited to a specific embodiment or compare an accused product to a specific embodiment to argue infringement or non-infringement, but parties may refer to an embodiment in the context of explaining the patent.

**Motion in Limine No. 14**: Exclude any argument that Nortel MG9K and CS2K contain the accused features, predates the priority date of the '273 patent, or is prior art to the '273 patent.

**DENIED**. However, arguments and evidence about the Nortel MG9K and CS2K are excluded to the extent such arguments would violate any other Motion(s) *in Limine*.

**C. Genband's Motions *in Limine* (Dkt. 200)**

**Motion in Limine No. 1**: Exclude evidence or argument related to Metaswitch's unfair competition allegations and other counterclaims that have been stayed.

The Court severs this Motion into sub-parts and rules on each as follows:

**Sub-Part 1.1**: Exclude allegations that Genband brought its patent claims or counterclaims

for an improper or anticompetitive purpose, such as suggesting Genband brought "sham" litigation or that Genband is violating antitrust laws.

**GRANTED** by agreement with the proviso that Genband will not argue that this case was filed in response to the 2:14-cv-33 action.

**Sub-Part 1.2**: Exclude allegations that Genband asserted patents knowing that they are invalid, or unenforceable.

**DENIED**.

**Sub-Part 1.3**: Exclude alleged plans to acquire Metaswitch and eliminate competitors.

**GRANTED-IN-PART** as to plans to eliminate competitors.

**Sub-Part 1.4**: Exclude alleged plans to kill Metaswitch or put it out of business, including that Genband is at "war" with Metaswitch.

**GRANTED**.

**Sub-Part 1.5**: Alleged statements by Genband concerning Metaswitch's financial condition or stability.

**GRANTED** as to statements to third parties by Genband about Metaswitch's financial condition.

**Sub-Part 1.6**: Alleged statements by Genband to customers concerning the -33 or -744 lawsuits.

**GRANTED**.

**Sub-Part 1.7**: Alleged statements by Genband to customers that Metaswitch infringes Genband's patents.

**DENIED**.

**Sub-Part 1.8**: Alleged plans to disrupt an initial public offering by Metaswitch.

**GRANTED**.

**Motion in Limine No. 2**: Exclude evidence or argument suggesting that Genband brought its counterclaims to reduce competition.

**GRANTED** by agreement. However Genband may open the door by placing its motivations for filing suit at issue.

**Motion in Limine No. 3**: Exclude evidence or argument related to Genband wanting or trying to put Metaswitch out of the market.

**GRANTED** by agreement. However the parties are not precluded from introducing evidence of competition.

**Motion in Limine No. 4**: Exclude evidence or argument related to Genband acquisitions or divestitures other than those related to the chain of title of the patents-in-suit or relevant to the accused Genband products.

**GRANTED-IN-PART.**

Metaswitch may not refer to Genband acquisitions or divestitures to suggest that Genband does not compete fairly or that it is improper to grow a company by acquisition. Likewise Metaswitch may not use evidence of Genband acquisitions or divestitures to argue any claim or defense that has been stayed and severed from this action. However, evidence of Genband acquisitions or divestitures may be used to the extent such evidence is relevant to damages.

**Motion in Limine No. 5**: Exclude evidence or argument related to layoffs or restructuring at Genband.

**GRANTED.** However, Genband may open the door by introducing evidence or argument about Metaswitch's hiring of former Genband employees.

**Motion in Limine No. 6**: Exclude testimony regarding Brendon Mills's employment or interactions with Carrius Technologies/AppTrigger/Metaswitch, or the cease-and-desist letter sent by Genband.

Genband's motion *in limine* no. 6 is **WITHDRAWN** by agreement of the parties. (Dkt. No. 264-1 at 1).

**Motion in Limine No. 7**: Exclude evidence or argument related to the terms of standards participation agreements.

**GRANTED-IN-PART** by agreement of the parties. Expert witnesses are precluded from offering testimony interpreting the terms of any standards participation agreement.

**Motion in Limine No. 8**: Exclude evidence or argument related to whether one company is an "alter ego" or is liable for the obligations of another company, including but not limited to whether any Nortel-related entities are alter egos of each other.

**GRANTED**.

**Motion in Limine No. 9**: Exclude evidence or argument related to the Open VOB Forum.

**DENIED.**

**Motion in Limine No. 10**: Exclude evidence or argument related to references identified in an expert report's "technology background" section that were not charted in Metaswitch's invalidity contentions.

**GRANTED.** Neither party may rely on unelected prior art references, including standards.

**Motion in Limine No. 11**: Exclude testimony or opinion that the QUANTiX QFlex eSBC product allegedly infringes the '640 Patent.

Genband's motion *in limine* no. 11 is **GRANTED** by agreement of the parties. (Dkt. No. 280); *see also* Agreed Motion in Limine No. 22, *supra* (granting same relief).

**Motion in Limine No. 12**: Exclude evidence or argument related to alleged copying by Genband.

The Court **DEFERS** ruling on this Motion. The Court will address this Motion in connection with Genband's Motion to Strike Opinions of Dr. Eric W. Burger. (Dkt. No. 175).

**Motion in Limine No. 13**: Exclude evidence or argument related to references to total revenue numbers for the accused Genband products and prices paid or considered for other technology.

**GRANTED-IN-PART**. Both parties agree to approach the bench before introducing evidence of total revenues for any accused product(s). Moreover, both parties agree to approach

the bench before introducing evidence of the CVAS acquisition price or any amount bid for the CVAS assets.

**Motion in Limine No. 14**: Exclude evidence or argument suggesting that the jury should award damages for sales or other activities of Nortel or uReach.

The Court **DEFERS** ruling on this Motion. The Court will address this Motion in connection with Genband's Motion to Strike Opinions of Metaswitch's Damages Expert. (Dkt. No. 181).

**Motion in Limine No. 15**: Exclude evidence or argument related to Lance Gunderson's untimely calculations for the '667 patent.

The Court **DEFERS** ruling on this Motion. The Court will address this Motion in connection with Metaswitch's Motion to Strike Opinions of Damages Expert Christopher Bakewell. (Dkt. No. 183).

## II. MOTION TO STRIKE MR. JAMES R. BRESS

Metaswitch Moves to Strike Portions of the Expert Report of Mr. James R. Bress. (Dkt. No. 179; "Motion to Strike"). Metaswitch moves to strike two categories of opinions: (1) Mr. Bress's invalidity opinions that rely on Metaswitch's infringement theories, and (2) aspects of Mr. Bress's non-infringement opinions that Metaswitch contends misinterpret or misapply the claim language. The first of these two categories is relevant to Metaswitch's Motions *in Limine* Nos. 2, 3, 4, and 9. Accordingly, the Court addresses that aspect of the Motion to Strike herein.

Issued patents are presumed valid, and the accused infringer bears the burden of proving

invalidity by clear and convincing evidence. *Commil USA, LLC v. Cisco Sys.*, 135 S. Ct. 1920, 1929 (2015). "[T]o prove that a claim is anticipated under 35 U.S.C. § 102(b), defendants must present clear and convincing evidence that a single prior art reference discloses, either expressly or inherently, each limitation of the claim." *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1349 (Fed. Cir. 2002).

There is a narrow exception. When the defendant contends the patent is invalidated by the accused product itself, the patentee's infringement allegations operate as a concession that the accused product meets the limitations of the asserted claims. *See Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000). The *Vanmoor* exception requires an <u>identity</u> between the accused product and the asserted prior art, at least with respect to the aspects of the product that are accused of infringement. *See Vanmoor*, 201 F.3d at 1366 (prior art accused product "made to specifications that remain unchanged to the present day"); *U.S. Ethernet Innovations, LLC v. Tex. Instruments, Inc.*, 2014 U.S. Dist. LEXIS 45926 at *9 (E.D. Tex. Apr. 3, 2014) (A party "cannot argue a product contains each and every element of the patented invention for infringement purposes, but that the <u>same product</u> does not contain each and every element of the patented invention for invalidity purposes.") (emphasis added); *Inline Connection Corp. v. Earthlink, Inc.*, 684 F. Supp. 2d 496, 514 (D. Del. 2010) (holding it is not sufficient for the prior art and the accused product to be "materially identical"; there must be "no dispute that the accused infringing product was <u>identical</u> to the prior art") (emphasis added).

The *Vanmoor* exception is, and must be, narrowly construed to require the defendant to allege and prove an identity between the accused product and the prior art. This is so for two important reasons. *First*, to allow a defendant to show mere similarity, analogy, or comparability between the "features" or "functionality" of the accused product and the prior art would

impermissibly allow defendants to sidestep the rigorous standard of proof for invalidity—clear and convincing evidence that the prior art discloses "each limitation of the claim." *See In re Cruciferous Sprout Litig.*, 301 F.3d at 1349. *Second*, opening the *Vanmoor* door more than a crack invites a "practicing the prior art" defense, which the Federal Circuit has squarely and repeatedly rejected as improper: "anticipation cannot be proved by merely establishing that one 'practices the prior art' . . . mere proof that the prior art is identical, in all material respects, to an allegedly infringing product cannot constitute clear and convincing evidence of invalidity." *Zenith Elecs. Corp. v. PDI Commun. Sys.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008). Thus proof that the accused product and the prior art are similar, comparable, or even materially identical, is not sufficient under *Vanmoor* and *Zenith*. *See also Inline Connection*, 684 F. Supp. 2d at 515 (attempting to prove the accused product and the prior were "materially identical" constituted an impermissible "practicing the prior art" defense).

Metaswitch challenges the sufficiency of Genband's *Vanmoor* invalidity theory, articulated in the Expert Report of Mr. Bress. First, Metaswitch argues Genband's theory was not properly disclosed under the Patent Local Rules, which require invalidity contentions to contain "[t]he identity of each item of prior art that allegedly anticipates . . . [p]rior art under 35 U.S.C. § 102(b) shall be identified by specifying the item offered for sale or publicly used or known, the date the offer or use took place or the information became known, and the identity of the person or entity which made the use or which made and received the offer, or the person or entity which made the information known or to whom it was made known." Pat. L.R. 3-3(a). Invalidity contentions must also contain "[a] chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found." Pat. L.R. 3-3(c).

Genband's contentions, for each patent, recite some variation of the following under the

16

heading "Other Grounds for Invalidity":

> Metaswitch has provided claim charts with its view of how certain functionality of the GENBAND accused products practice the asserted claims. The GENBAND products accused of infringing the '768 Patent do not practice all limitations of any valid claim of the '768 Patent. However, because the GENBAND accused products and/or their predecessor products that included the accused functionality were sold, offered for sale, and/or in public use prior the filing date of the '768 Patent GENBAND, to the extent any GENBAND accused product is found to infringe a claim of the '768 Patent, such claim would be invalid as a matter of law in view of the GENBAND accused product and/or its predecessor products.

(Dkt. No. 194-2 at 5); *see also* (*id.* at 3–4, 6–7). For the '522 and '640 Patents, Genband also purports to provide non-limiting examples of "accused products and/or their predecessor products" in the form of a parenthetical: "(e.g., Nortel MCS, A2 Application Server, Nortel CS2K, Nortel CS2000, Nortel Personal Communicator)." (*Id.* at 4).

The problems with this disclosure are multifarious. First, Genband does not specify the identity of "each item or prior art" it relies on; at best it provides non-limiting examples of "accused products and/or their predecessor products." Second, Genband does not specify the statutory grounds for its invalidity theory. Indeed, the use of "and/or" could be interpreted to mean that Genband intends to combine accused products and predecessor products as part of an obviousness theory. Third, Genband does not include a chart under Pat. L.R. 3-3(c). This might be excusable in the context of a *Vanmoor* argument, since it relies on the Plaintiff's infringement theory, but at a minimum Genband should have identified specific infringement contention chart(s) and incorporated them by reference. Finally, Genband does not specify where or when the accused products were allegedly available before the priority date.

Metaswitch also argues that Genband's expert Mr. Bress, who opines that the asserted claims are anticipated by the accused products, does not advance a proper *Vanmoor* invalidity theory. Metaswitch contends that the functionality of the accused products changes "regularly as

new features, product enhancements, and bug fixes" are added, and that at least one accused feature (the "One Number/Family Number" feature) was added to the accused products after the priority date of the '522 Patent. (Dkt. No. 201 at 3). Metaswitch argues that Mr. Bress's report does not adequately contend with these changes.

Mr. Bress opines that "at least some of the Accused uReach Products were sold, offered for sale, and/or publicly used at least one year before the '768 Patent was filed in the United States." (Dkt. No. 194-3 at 7); *see* a*lso* (*id.* at 12, 13) (offering same opinion for other patents and products). He does not opine that the accused products are identical to the versions allegedly on sale before the priority date, instead he says "the claim chart attached as Exhibit 4a illustrates that the functionality accused by Metaswitch was available in versions of the uReach voice mail systems available prior to the filing of the '768 Patent." (*Id.* at 7) (emphasis added); *see also* (*id.* at 12, 13). His somewhat vague reference to "functionality" is further muddied in his attached charts. (Dkt. Nos. 194-4, 194-5, 194-7). For most of the limitations charted, his analysis begins with the statement "Metaswitch's contentions are unclear about what precise functionality Metaswitch accuses of practicing this limitation." *See, e.g.* (Dkt. No. 194-4 at 3). He then opines that the functionality Metaswitch "appears" to accuse was present in prior versions of the accused products based on the fact that "similar documents" to those cited in Metaswitch's contentions describe the accused functionality in the same way. *See, e.g.* (*id.* at 3–4). For some limitations he does not even rely on documentation, and instead states that the same "marketing term" has been applied to a particular feature since it was introduced. *See, e.g.* (Dkt. No. 194-7 at 3). Mr. Bress states he has not reviewed source code for these products.

Neither Genband nor Mr. Bress disputes Metaswitch's contention that the accused products are regularly modified with software version updates. Therefore it is Genband's burden under

18

*Vanmoor* to prove that the accused elements remain <u>unchanged</u> between the accused products and the alleged prior art versions, despite these periodic updates. Admitting uncertainty as to what is actually being accused, then noting that an accused "functionality" is described the same way in documentation (or that the same "marketing term" is applied) is not sufficient. Mr. Bress' broad-strokes opinions about similar "functionality" constitute an impermissible practicing the prior art defense. *See Zenith*, 522 F.3d at 1363.

The Court finds that Genband has not met the legal requirements of a *Vanmoor* invalidity defense; both its invalidity contentions and the Report of Mr. Bress are insufficient to properly raise this defense. Accordingly, Metaswitch's Motion to Strike and corresponding Motions *in Limine* are **GRANTED** to the extent that Genband is precluded from raising any § 102 or § 103 invalidity defense that does not rely on proof that the prior art (individually or in combination) discloses each element of one or more asserted claims.

At this time, the Court does not rule on the aspects of Metaswitch's Motion to Strike that pertain to Mr. Bress's interpretation and application of the claim language.

**SIGNED this 1st day of March, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE