IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| METASWITCH NETWORKS LTD. | § § | |
| v. | § § | Case No. 2:14-cv-744-JRG-RSP |
| GENBAND US LLC, ET AL. | § | |

**MEMORANDUM ORDER**

Before the Court is a Motion to Exclude Certain Opinions of Metaswitch's FRAND Damages Expert Matthew R. Lynde filed by Genband US, LLC ("Genband"). (Dkt. No. 177; "Motion to Strike"). Metaswitch Networks Ltd. ("Metaswitch") opposes the Motion.

**I. LAW**

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one," but, in *Daubert*, the Supreme Court held that the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) ("Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field.").

"The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in

issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including: "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"); *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

"The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

## II. ANALYSIS

Genband argues that Mr. Lynde's "opinions here suffer from the same flaws as in the first-filed GENBAND patent infringement suit." (Dkt. No. 177 at 5); *see also Genband v. Metaswitch*, Case No. 2:14-cv-33 ("the -33 Case"). As in the -33 Case, Genband's Motion to Strike challenges three categories of opinions offered by Mr. Lynde: (1) opinions regarding FRAND that purport to

offer legal conclusions about Genband's contractual obligations; (2) opinions about a FRAND rate that rely on the W-CDMA Patent pool; and (3) an alternative "top down" approach that "allocat[es] the available profit on the smallest saleable unit ('SSU') across an estimate of the minimum number of all relevant [standards-essential patents]."

Neither party contests that Mr. Lynde's challenged opinions are substantially the same as in the -33 Case. Consistent with the Court's Order in the -33 case—*Genband v. Metaswitch*, Case No. 2:14-cv-33, Dkt. No. 431 at 7–10 (E.D. Tex. Jan. 9, 2016)—the Court rules as follows:

**A. FRAND Obligation Opinions**

Genband argues that Mr. Lynde's opinions regarding FRAND are legal conclusions about whether Genband is contractually obligated to license its patents at a FRAND rate. (Dkt. No. 177 at 8–14). Genband asks the Court to strike these opinions as improper legal testimony by an economic expert "as to the metes and bounds of the contracts at issue." (*Id.* at 9).

Metaswitch responds that Mr. Lynde is not offering "legal conclusions about Genband's obligations, but rather opinions regarding economic issues that have been discussed in the academic literature relating to SSOs and FRAND licensing" (Dkt. No. 185 at 11). Consistent with Metaswitch's representation, it is proper for Mr. Lynde, as an economist, to assume for purposes of his analysis that a FRAND obligation exists and to opine about what effect this obligation would have on damages. This analysis necessarily requires him to analyze the scope and nature of the alleged FRAND commitment and to give his opinions about its economic effect. An analysis of this type does not constitute improper legal opinion. However, Mr. Lynde should use care not to run afoul of his and Metaswitch's representations—he should not offer legal conclusions about whether Genband is actually bound by a contractual FRAND obligation.

### B. Comparable Patent Pool

Genband asks the Court to strike Mr. Lynde's reliance on the W-CDMA patent pool license as evidence of the FRAND rate in this case. (Dkt. No. 177 at 14–18). Genband argues that this patent pool relates to different technology that is not sufficiently comparable to the patents-in-suit.

The Federal Circuit has "long required district courts performing reasonable royalty calculations to exercise vigilance when considering past licenses to technologies other than the patent in suit." *ResQNet.com, Inc. v. Lansa, Inc,*, 594 F.3d 860, 869 (Fed. Cir. 2010). With that admonition in mind, the Court nevertheless concludes that Mr. Lynde's testimony is supported by sufficient evidence of comparability to render it admissible under *Daubert*. Mr. Lynde relies on the opinion of Metaswitch's technical expert Dr. Williams to determine that the technology licensed under the W-CDMA patent pool agreement is technically and economically comparable to the technology at issue in this case. *See* (Dkt. No. 177-3 at ¶ 44). His opinions are supported by reliable economic and technical analysis.

Likewise, Mr. Lynde's opinions about the magnitude of the multiplier he applies are supported by analysis and are not "arbitrary" like the 25% rule of thumb. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011). Mr. Lynde, relying upon his expertise as an economist, cites the need to adjust the patent pool licensing rate based on real-world factors such as the participation rate and the value of expected cross-licenses. (Dkt. No. 177-3 at ¶ 45). Based on these considerations, he determines that a multiplier of three is appropriate. (*Id.*)

Accordingly, the W-CDMA patent pool is sufficiently comparable to render Dr. Lynde's opinions admissible, and his multiplier opinions are supported by analysis. The precise degree of comparability goes to weight and may be explored by the parties on cross examination.

## C. Top Down Approach

Finally, Genband criticizes Mr. Lynde's "top down" approach, which he uses to derive an alternative FRAND royalty rate. (Dkt. No. 177 at 18–19; Dkt. No. 177-3 at ¶¶ 46–49). Mr. Lynde conducts his top down analysis by "allocating the available profit on the smallest saleable unit ('SSU') across an estimate of the minimum number of all relevant SEPs [Standard-Essential Patents]." (Dkt. No. 177-3 at ¶ 46).

However, the way Mr. Lynde determines the "proportion of Genband's '006 patent to total SEPs for the Metaswitch accused product" is by counting the number of companies that provided intellectual property disclosures to the IETF standard setting organization, and assuming that the value of each participant company's patent portfolio is the same. (Dkt. No. 177-3 at ¶ 48). This approach ignores the size of each company, the number of patents in each company's portfolio, and the differences in value between patents—his approach necessarily assumes that every participant company's patent portfolio was exactly the same as Nortel's. Mr. Lynde's only justification for glossing over these details is that "Nortel is one of many large technology companies with significant patent portfolios in this area." (*Id.*). He does not attempt to quantitatively (or even qualitatively) compare Nortel's portfolio to the portfolios of the other participant companies.

Mr. Lynde's top down approach is highly speculative and not supported by sufficient "facts or data." *See In re Innovatio IP Ventures, LLC*, 2013 U.S. Dist. LEXIS 144061 at *168 (N.D. Ill. Sept. 27, 2013) (top down approach "requires verifiable data points, such as the number of 802.11 standards-essential patents"). Mr. Lynde admits in his report that "there is no information available with regard to the specific patents that may be covered under the blanket declaration by a given

company." (Dkt. No. 177-3 at ¶ 48). An absence of information is not a license to speculate. Mr. Lynde's opinions relating to the "top down" approach are excluded.

### III. CONCLUSION

For the foregoing reasons, Genband's Motion to Strike Matthew R. Lynde (Dkt. No. 177) is **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth in this Order.

**SIGNED this 7th day of March, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE