IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| METASWITCH NETWORKS LTD. | § § | |
| v. | § § | Case No. 2:14-cv-744-JRG-RSP |
| GENBAND US LLC, ET AL. | § § | |

## MEMORANDUM ORDER

Before the Court is a Motion to Strike Certain Opinions of Dr. Eric W. Burger filed by Genband US, LLC ("Genband"). (Dkt. No. 175). Also before the Court is Genband's Motion to Strike Certain Opinions of Dr. Tim A. Williams Regarding Patent Nos. 8,687,640 (the '640 Patent), 8,611,522 (the '522 Patent), and 8,488,768 (the '768 Patent) (Dkt. No. 178) and Genband's Motion to Strike Opinions of Dr. Williams Regarding Patent No. 8,600,006 (the '006 Patent) (Dkt. No. 180). Metaswitch Networks Ltd. ("Metaswitch") opposes these motions.

## I. LAW

### A. Rule 702

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one," but, in *Daubert*, the Supreme Court held that the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993); *see also Apple Inc. v. Motorola, Inc.*,

757 F.3d 1286, 1321 (Fed. Cir. 2014) ("Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field.").

"The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including: "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"); *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

"The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

### B. The Doctrine of Equivalents

If an accused instrumentality does not literally infringe a claim, it may nevertheless infringe under the doctrine of equivalents if the patentee can show "that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method." *AquaTex Indus. v. Techniche Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007). "Infringement, whether literal or under the doctrine of equivalents, is a question of fact." *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129-30 (Fed. Cir. 2011).

"[W]hen an applicant during prosecution either makes an argument evincing a clear and unmistakable surrender of subject matter . . . or narrows a claim to avoid the prior art, or otherwise to address a specific concern . . . that arguably would have rendered the claimed subject matter unpatentable . . . [t]he applicant is then estopped from later invoking the doctrine of equivalents to recapture the surrendered subject matter." *Spectrum Pharms., Inc. v. Sandoz Inc.*, 802 F.3d 1326, 1337 (Fed. Cir. 2015) (citations omitted); *see also EMD Millipore Corp. v. AllPure Techs., Inc.*, 768 F.3d 1196, 1203 (Fed. Cir. 2014) ("Estoppel then bars the applicant from later invoking the doctrine of equivalents to recapture the surrendered ground"). "Whether prosecution history estoppel applies, and thus whether the doctrine of equivalents is available for a particular claim limitation, is a question of law." *Spectrum Pharms.*, 802 F.3d at 1337.

## II. ANALYSIS

### A. Motion to Strike Dr. Burger

Genband moves to strike two categories of opinions from Dr. Burger's report: (1) opinions related to copying and commercial success as secondary considerations of non-obviousness, and

(2) opinions relating to infringement under the doctrine of equivalents. (Dkt. No. 175).

Genband argues that Dr. Burger's opinions on copying are legally erroneous because he opines that "Genband copied the invention" of the asserted patents, rather than opining that Genband copied a particular product that embodies the patents. *See* (*Id.* at 7–13). Genband contends this is improper because Dr. Burger's opinion would permit mere infringement of a patent to serve as evidence of copying. (*Id.*). Genband also argues, for both copying and commercial success, that Dr. Burger improperly relies on evidence that Genband was "tracking the progress" of New Class Five, which is a company and not a specific patent or product. (*Id.* at 11–14).

Evidence of copying the invention disclosed in a patent can support a finding of non-obviousness. *See Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1329 (Fed. Cir. 2009) (evidence that the accused infringer "suddenly changed direction" in its R&D efforts after the asserted patent issued supported an inference of copying). The law does not require that a particular product be copied—the requirement is that "a nexus between the copying and the novel aspects of the claimed invention must exist for evidence of copying to be given significant weight in an obviousness analysis." *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1364 (Fed. Cir. 2012).

Accordingly, the Court will limit Dr. Burger's opinions on copying and commercial success in the same manner as Dr. Lanning's opinions on these subjects, and for the same reasons. (Dkt. No. 269). Dr. Burger may rely on and offer opinions about evidence of copying and commercial success so long as this evidence is tied to the claimed invention of an asserted patent. Thus evidence that Genband copied an allegedly patent-practicing product or evidence that Genband copied the disclosure of an asserted patent bears a sufficient nexus to be admissible under

4

Rule 702. Likewise, Dr. Burger may opine about the commercial success of a product that Metaswitch alleges practices one or more asserted patents. However, the fact that Genband was "tracking the progress" of a company as a whole is not sufficiently connected to any alleged act of copying or attempted copying of the claimed invention.[1] Moreover, Dr. Burger may not rely on evidence of the general commercial success of a company unless the evidence links this success to particular asserted patent(s) or patent practicing product(s).

Genband also challenges Dr. Burger's opinions about infringement under the doctrine of equivalents. (Dkt. No. 175 at 14–20). Genband argues that Dr. Burger's opinions are "conclusory," "cursory," and fail to provide "any substantive analysis." (*Id.* at 15). Genband also argues that prosecution history estoppel bars the application of the doctrine of equivalents to the asserted claims of the '282, '482, and '273 Patents because the claims of these patents were amended during prosecution in response to rejections. Metaswitch represents that it "no longer asserts infringement under the doctrine of equivalents for the limitations identified in Dkt. 175 at Section C. ii. (i)-(iii)." (Dkt. No. 190 at 14). Accordingly, Genband's prosecution history estoppel arguments are moot.

Dr. Burger's doctrine of equivalents opinions are sufficiently explained and supported to be admissible under Rule 702. For each claim limitation, Dr. Burger opines that the accused products perform substantially the same function, in substantially the same way, to achieve substantially the same result, and he identifies the specific function, way, and result for each limitation. *See, e.g.* (Dkt. No. 190-3 at ¶ 68). Moreover, his analysis of literal infringement provides additional details

---

[1] Genband is also correct that the mere fact of patent infringement is not sufficient, by itself, to show copying. Copying must be motivated by the benefits of the claimed invention and not some un-patented feature or mere inadvertence. *Cf. Wm. Wrigley*, 683 F.3d at 1364 (patentee must show "the novel combination of WS-23 and menthol is what led Cadbury to copy Wrigley's chewing gums") (emphasis added).

5

about how, in his opinion, the accused products operate. Dr. Burger's methodology and the facts he relies on are clearly set forth in his report.

Genband's Motion to Strike Dr. Burger is also pertinent to Genband's Motion *in Limine* No. 12, which asks the Court to "Exclude evidence or argument related to alleged copying by Genband." Motion *in Limine* No. 12 is **DENIED**, with the proviso that evidence and argument related to copying must meet the requirements set forth in this Order and in the Court's Order on Metaswitch's Motion to Strike Mark Lanning (Dkt. No. 296). Specifically, evidence of copying must be tied to one or more asserted patent(s) (or some product, feature, or technology that a party alleges embodies one or more asserted patents). Evidence of a "culture of copying" or that a party was monitoring another company does not bear a sufficient *prima facie* nexus to the asserted patents.

**B. Motion to Strike Dr. Williams Regarding the '640, '522, and '768 Patents**

Genband moves to strike three categories of opinions offered by Metaswitch's expert Dr. Williams: (1) his rebuttal to Dr. Bress's opinions that Genband accused products are *Vanmoor* prior art; (2) his opinions that accused Genband SBCs satisfy the "including…" step of Claim 8 of the '640 Patent; and (3) his opinions that Genband products infringe the asserted claims of the '640 and '522 Patents under the doctrine of equivalents. (Dkt. No. 178).

The Court has excluded Dr. Bress' *Vanmoor* anticipation opinions. (Dkt. No. 289 at 14–19). Accordingly, Dr. Williams need not rebut those opinions. Genband's Motion to Strike is therefore moot with respect to ¶¶ 110–119 of Dr. Williams's Report. (Dkt. No. 178-2 at ¶¶ 110–119).

Genband challenges Dr. Williams's opinion that claim 8 of the '640 Patent is infringed, arguing that Dr. Williams "is applying a construction contrary to the Court's construction." (Dkt.

No. 178 at 12–15). The Court construed the phrase "to enable bypass of said media gateway in said media path if an ensuing device in said outbound signaling path determines that such bypass should be conducted" to mean: "based at least in part on the preceding device connectivity data, an ensuing device determines whether said media gateway should be bypassed." (Dkt. 136 at 28). Genband argues "Dr. Williams repeatedly states his opinion that a GENBAND SBC infringes Claim 8 when the SBC (i.e. 'media gateway') determines whether to bypass itself." (Dkt. 178 at 12). In other words, Genband argues that the SBC cannot satisfy both the "media gateway" and "ensuing device" claim elements.

The Court's construction does not preclude a single accused product from satisfying both the "media gateway" and "ensuing device" claim elements. Whether the accused SBC actually infringes both elements is a question of fact. *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. De C.V.*, 464 F.3d 1339, 1349 (Fed. Cir. 2006) ("Whether a product falls within the literal scope of a properly construed claim is a question of fact, on which we accord a jury substantial deference"). Dr. Williams recites the Court's claim construction in his report and offers analysis that applies it. (Dkt. No. 193-8 at ¶¶ 94–96, 130). His opinions are therefore not contrary to the Court's construction and are admissible under Rule 702.

Genband also moves to strike Dr. Williams's doctrine of equivalents opinions, first arguing that his opinions are "conclusory" and fail to provide "any substantive analysis." (Dkt. No. 178 at 15). Like Dr. Burger's doctrine of equivalents opinions discussed in Part II.A., *supra*, Dr. Williams's opinions are sufficiently explained and supported. For each claim limitation, Dr. Williams opines that the accused products perform substantially the same function, in substantially the same way, to achieve substantially the same result, and he identifies the function, way, and result is for each limitation. *See, e.g.* (Dkt. No. 193-8 at ¶ 135). His opinions are presented in level

of detail comparable to Dr. Burger's opinions and are admissible under Rule 702 for the same reasons.

Finally, Genband argues that Dr. Williams' doctrine of equivalents opinions for the '640 Patent are barred by prosecution history estoppel—specifically his opinion that an SBC can satisfy both the "media gateway" and "ensuing device" elements. (Dkt. No. 178 at 16–17). Genband does not cite any claim amendments as the basis for its prosecution history estoppel argument. Instead, Genband argues that the following applicant statement during prosecution gives rise to estoppel:

> In Hellwig, nodes which want to be in the media path for a call indicate such "media plane access needs" in signalling information for the call and are subsequently included in the media path for the call. In contrast, in the disclosed invention, a media gateway includes connectivity data in communication session setup signalling which indicates media connectivity for one or more preceding devices in the signalling path. <u>Ensuing devices can then use the preceding device connectivity data to decide whether a preceding media gateway can be bypassed from the media path of a communication session.</u>

(Dkt. No. 178-10 at 15) (emphasis added by Genband). It is not at all clear that this statement evinces surrender, and Genband does not explain what the alleged scope of this surrender would be. The most straightforward reading of the quoted statement distinguishes Hellwig based on the fact that "nodes which want to be in the media path" must <u>opt in</u> by signaling, whereas the claimed media gateway <u>opts out</u> by signaling that it can be bypassed. There is nothing in this statement that distinguishes Hellwig by, e.g., arguing the media gateway and ensuing device must be separate. The Court finds no basis for excluding Dr. Williams' opinions under the doctrine of prosecution history estoppel.

**C. Motion to Strike Dr. Williams Regarding the '006 Patent**

Genband moves to strike two of Dr. Williams's opinions regarding the '006 Patent: (1) his non-infringement opinions, arguing he has applied a construction of the term "second call" that was rejected and (2) his opinion that the '006 is standards essential, arguing this opinion is

8

improperly based on an infringement analysis Dr. Williams disagrees with. (Dkt. No. 180).

The Court held that the terms "call" and "second call" have their plain and ordinary meanings with no construction necessary. (Dkt. No. 136 at 97–99). In so holding, the Court expressly rejected Metaswitch's argument that a "call" is limited to a "voice session." (*Id.*). Genband argues that Dr. Williams has improperly constrained his interpretation of "call" to include only voice calls, based on his statement that "[t]he call in Claim 1 is referring to a voice or communications session between two user elements or endpoints." (Dkt. No. 180-2 at ¶ 111).

The Court's construction of "call" did not exclude voice sessions, but held that the scope of this term was not so limited. Genband does not identify anywhere in Dr. Williams's analysis where he opines that a call is limited to only voice. Indeed, the quoted portion of his report refers to "a voice <u>or communications session</u>." However, Genband identifies a somewhat ambiguous statement in Metaswitch's Response that could be read to imply a call must include "at least voice." *See* (Dkt. No. 188 at 6).

The Court will not strike Dr. Williams's opinions about the "call" limitation because it is not apparent that Dr. Williams opinions contradict the Court's claim construction. However, the term "call" is not limited to "voice" and was not construed to require "voice." (Dkt. No. 136 at 97–99). Accordingly, parties should not present opinions or arguments at trial that attempt to import a "voice" requirement into the "call" terms.

Finally, Genband moves to strike Dr. Williams's opinion that Genband's '006 Patent is standards essential. (Dkt. No. 180 at 6–10). This is because Dr. Williams's standard-essentiality opinions are based on Dr. Beckmann's infringement opinions, and Dr. Williams has stated he disagrees with Dr. Beckmann's infringement opinions. *See* (Dkt. No. 180-3 at 639:13-19) ("Q. You do not think that Dr. Beckman is applying the correct scope of the claims, correct? A. For

essentiality or infringement? Q. For infringement? A. I believe that he is not applying the correct interpretation of the claim elements, yes.").

In the prior *Genband* case this Court held that an expert, in the context of an invalidity analysis, "may not offer an opinion she believes to be incorrect or unreliable. . . . if an expert disagrees with the principles and methods embodied in an adverse party's infringement theory, that expert is not permitted under Rule 702 to apply the adverse party's infringement theory to affirmatively conclude that the patent is invalid." *Genband v. Metaswitch*, Case No. 2:14-cv-33, Dkt. No. 370 at 4–5 (E.D. Tex. Sept. 30, 2015). This holding is premised on the fact that a party alleging invalidity must meet an affirmative burden of proof to show that the patent is invalid. A party cannot meet this burden by offering expert testimony that relies on an infringement analysis the expert disagrees with.

In contrast, Dr. Williams offers his standards-essentiality opinions in the context of damages. *See* (Dkt. No. 188 at 9–12). A damages analysis necessarily begins with the assumption of infringement (else the patentee would not be entitled to damages). A non-infringement expert who also offers opinions relevant to damages must necessarily assume his non-infringement opinions are wrong for purposes of his damages analysis. Moreover, Dr. William's damages opinions are rebuttal opinions for which Metaswitch does not bear the burden of proof. *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 26 (Fed. Cir. 2012) ("The patentee bears the burden of proving damages."). Thus there is nothing improper or unreliable about Dr. Williams offering the alternative opinion that "to the extent the accused products are found to infringe, they do so because of their compliance with several industry standards" despite his opinion that the accused products do not infringe. (*Id.* at 12).

Genband also argues Dr. Williams' opinions are unreliable because he does not sufficiently

disclose his analysis. Dr. Williams provides detailed element-by-element claim charts showing how the patents are standards-essential under Dr. Beckmann's infringement analysis. (Dkt. Nos. 188-6, 188-7). These charts show his methodology in detail. Genband is free to explore or attack Dr. Williams' reliance on Dr. Beckman during cross examination, but Dr. Williams's opinions are sufficiently disclosed and are admissible under Rule 702.

### III. CONCLUSION

For the foregoing reasons, Genband's Motion to Strike Dr. Burger (Dkt. No. 175) is **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth in this Order. Genband's Motion to Strike Dr. Williams Regarding the '640, '522, and '768 Patents (Dkt. No. 178) is **DENIED**. Genband's Motion to Strike Dr. Williams Regarding the '006 Patent (Dkt. No. 180) is **DENIED**.

Genband's Motion *in Limine* No. 12 is **DENIED**, with the proviso that evidence and argument related to copying must meet the requirements set forth in this Order and in the Court's Order on Metaswitch's Motion to Strike Mark Lanning (Dkt. No. 296).

**SIGNED this 7th day of March, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE