IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| METASWITCH NETWORKS LTD. | § § | |
| v. | § § | Case No. 2:14-cv-744-JRG-RSP |
| GENBAND US LLC, ET AL. | § | |

## MEMORANDUM ORDER

Before the Court is a Motion to Exclude Testimony of Christopher Bakewell filed by Metaswitch Networks Ltd. ("Metaswitch"). (Dkt. No. 183). Genband US, LLC ("Genband") opposes the motion.

## I. LAW

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one," but, in *Daubert*, the Supreme Court held that the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) ("Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field.").

"The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in

issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including: "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"); *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

"The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

## II. ANALYSIS

### A. Motion to Strike Mr. Bakewell

Metaswitch moves to strike the opinions of Genband's damages expert Christopher Bakewell, arguing Mr. Bakewell relies on the technical guidance of Genband's expert Mark Lanning but fails to apply that technical guidance in a consistent manner. Metaswitch contends that

"[i]nternally inconsistent opinions are not reliable" under Rule 702 and should be excluded. (Dkt. No. 183 at 7).

Mr. Lanning offers technical opinions about non-infringing alternatives for the '667 Patent, upon which Mr. Bakewell relies. *See* (Dkt. No. 183-3 at ¶ 829). Mr. Lanning opines that if "each of Metaswitch products listed above were not to use DSP pooling, as required by the Asserted Claims of the '667 Patent, they would need to provide a dedicated DSP channel for each Subscriber line." (*Id.*). He then estimates the number of dedicated DSPs that would be required to implement this non-infringing alternative for each of two classes of accused products—the "DX" blade products and the "PB" card products. *See* (*Id.* at ¶¶ 823–33). Metaswitch documents state that the DX products could support 500,000 subscriber lines, but Mr. Lanning opines this number is unreasonably high, at least because it "would require the DX6730 to support over 30 times its current capacity." (*Id.* at 833). Accordingly, Mr. Lanning adopts the more conservative estimate of 70,000 subscriber lines. (*Id.*). For the PB products, which have a purported capacity of up to 70,000 subscriber lines, Mr. Lanning does not opine that any reduction in the capacity estimate is needed. *See* (*Id.*). Accordingly Mr. Lanning applied up to 708 DSPs to the PB product non-infringing alternatives, which results in an approximately 33.7 times increase in DSP capacity. *See* (Dkt. No. 183 at 5–6).

Metaswitch does not contest that Mr. Bakewell faithfully adopts and applies Mr. Lanning's opinions on the number of DSPs required. *See* (Dkt. No. 202). Accordingly, the relevant question is whether <u>Mr. Lanning's opinions</u> are unreliable or self-contradictory. The Court is not persuaded that they are. Mr. Lanning's opinions cap the number of subscriber lines for the DX products at 70,000 and reject a non-infringing alternative that would require "992 DSPs." (Dkt. No. 183-3 at ¶ 833). His opinions for the PB products also cap the subscriber lines at 70,000 and use a

maximum of 708 additional DSPs. (*Id.*). Although this results in a capacity increase for the PB products that is slightly in excess of 30 times its current capacity, his opinions for the two products are otherwise consistent and are based on his expertise and the facts and data he cites. The degree of consistency between his two analyses may be fertile ground for cross examination or rebuttal, but this Court will not strike his opinions under Rule 702 because they are not clearly contradictory nor inconsistent with his stated analysis. *See Summit 6*, 802 F.3d at 1296 ("the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court").

### B. Genband's Motion *in Limine* No. 15

Genband's Motion *in Limine* No. 15 asks the Court to strike the late-served rebuttal report of Metaswitch's damages expert Mr. Lance Gunderson. (Dkt. No. 200 at 13). This report was served shortly after Mr. Gunderson's deposition. In the report Mr. Gunderson rebuts Mr. Bakewell's and Mr. Lanning's opinions regarding the number of DSPs in the PB products.

Motions *in Limine* are typically used to exclude evidence or argument that would cause jury prejudice. Metaswitch represents it had agreed to not oppose—on timeliness grounds—Genband filing a *Daubert* motion about Mr. Gunderson's report. (Dkt. No. 234 at 14–15). Nevertheless, Genband filed a motion *in limine* and not a *Daubert* motion. Genband's Motion does not articulate any specific prejudice Mr. Gunderson's opinions would cause Genband or the jury. Moreover, Metaswitch's Response explains its reasons for serving the report late, and states why it believes Mr. Gunderson's opinions will be helpful to the jury. *See* (*Id.*) ("This report was issued immediately following Mr. Gunderson's deposition during which he addressed this issue at length, in response to Mr. Bakewell's failure to provide any explanation for the inconsistency at his deposition the week prior."). Metaswitch had also offered to make Mr. Gunderson available for an

additional deposition. (*Id.*).

In the absence of any specific showing of prejudice, and given that Metaswitch has offered some justification for its late disclosure, the Court determines that Metaswitch's untimely disclosure of Mr. Gunderson's report was harmless. *See CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009) (A court considers four factors to determine whether a Rule 26 violation is harmless: "(1) [the party's] explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to [the opposing party] in allowing the evidence, and (4) the availability of a continuance."). Genband's Motion in Limine No. 15 is therefore **DENIED**.

## III. CONCLUSION

For the foregoing reasons Metaswitch's Motion to Strike Mr. Bakewell (Dkt. No. 183) is **DENIED**. Genband's Motion in Limine No. 15 (Dkt. No. 200 at 13) is **DENIED**.

**SIGNED this 7th day of March, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE