IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| METASWITCH NETWORKS LTD. | § | |
| --- | --- | --- |
| | § | |
| v. | § | Case No. 2:14-cv-744-JRG-RSP |
| | § | |
| GENBAND US LLC, ET AL. | § | |

**MEMORANDUM ORDER**

Before the Court is a Motion to Exclude Testimony of James R. Bress filed by Metaswitch Networks Ltd. ("Metaswitch"). (Dkt. No. 179; Motion to Strike). Genband US, LLC ("Genband") opposes the motion. The Court previously ruled on Parts A–C of the Motion to Strike. (Dkt. No. 289 at 14–19). This Order pertains to the remaining portions (Parts D–F) of the Motion to Strike.

**I. LAW**

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one," but, in *Daubert*, the Supreme Court held that the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) ("Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field.").

"The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including: "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"); *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

"The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

## II. ANALYSIS

Metaswitch argues that Mr. Bress's non-infringement opinions for Patent Nos. 8,488,768 ('768), 8,611,522 ('522), and 8,687,640 ('640) are based on improper interpretations of the claims.

Specifically, Metaswitch takes issue with Mr. Bress's opinions that certain claim preambles and "whereby" clauses are limiting.

First, Metaswitch argues that the preamble of claim 1 of the '768 Patent is not limiting. (Dkt. No. 179 at 14–16). That claim reproduced here:

> 1. A method of routing calls to a single service destination for multi-service users in a telecommunications network, each of the multi-service users having access to a plurality of telephony services including a first telephony service provided in a first service provider network, and a second, different, telephony service provided in a second, different service provider network, the method comprising:
>
> receiving, in the first service provider network, an unanswered call directed to a first telephony party identifier associated with the first telephony service for a user;
>
> altering, in the first service provider network, first signaling information for the received unanswered call so as to modify destination information therein, the modified destination information for the call comprising a telephony party identifier associated with the single service destination, the single service destination being located in the second service provider network;
>
> adding, in the first service provider network, second signaling information for the received unanswered call so as to add a second telephony party identifier therein, the second signaling information for the received unanswered call comprising the second telephony party identifier, different to both the first telephony party identifier and the telephone party identifier associated with the single service destination, the second telephone party identifier being associated with the second telephony service for the user; and
>
> routing the received unanswered call to the single service destination located in the second telephony service network, on the basis of the altered first signaling information, to provide call completion to the single service destination, wherein the single service destination comprises a mailbox service.

*See* (*Id.* at 14–15).

Mr. Bress opines that the accused Genband products do not include the preamble terms "second, different, telephony service" or "second, different service provider network." (Dkt. No. 194-6 at ¶¶ 69–83). The phrase "second, different service provider network" was construed by this Court, and Metaswitch did not argue during claim construction that this term, or that the preamble

as a whole, is non-limiting. (Dkt. No. 136 at 9–13). Genband also notes that Metaswitch amended the preamble during prosecution to add the "provided in a second, different service provider network" limitation, and used this amendment as a basis to distinguish over prior art. *See* (Dkt. No. 194-12 at 3, 10); *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1347 (Fed. Cir. 2012) (preamble may be limiting where "the prosecution history suggests that the preamble language was considered necessary to the patentability of the claims"). Moreover, the preamble of claim 1 provides the antecedent basis for at least five claim terms. (Dkt. No. 194 at 18–19); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006) ("when the limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention") (citations omitted).

Accordingly, the Court finds that the preamble of claim 1 of the '768 Patent is limiting because it breathes "life, meaning, and vitality" into the claim. *See Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). Mr. Bress's non-infringement opinions based on the preamble to claim 1 of the '768 Patent will not be excluded.

Second, Metaswitch argues the preambles of claims 1, 10, and 12 of the '522 Patent are not limiting. (Dkt. No. 179 at 16–17). Specifically, Metaswitch argues that the terms "local exchange" and "a telephone" in the preambles do not limit the claims and do not provide the antecedent basis for any claim elements.

Genband responds that these two limitations were added in response to a prior art rejection, and that both terms ("local exchange" and "a telephone") were used by the patentee to distinguish the claim over the prior art. (Dkt. No. 194-10 at 3, 6–9) ("Ohura fails to disclose a local exchange that connects a telephone to a PSTN and to a packet-based telephony network. To the contrary, Ohura simply discloses a gateway . . . However, Ohura's gateway is <u>not</u> a local exchange, and, in

4

any case, Ohura's gateway does <u>not</u> connect a telephone associated with a multi-service user to a PSTN") (emphasis in original).

Here again, the applicant's decision to amend the preambles of the claims in response to a rejection and to argue that terms found in the amended preamble provide a distinction over the prior art establishes that the preambles of claims 1, 10, and 12 of the '522 Patent are limiting. *See also Jansen v. Rexall Sundown, Inc.*, 342 F.3d 1329, 1333 (Fed. Cir. 2003) (preamble was limiting where terms "were added to gain allowance of the claims").

Finally, Metaswitch argues that clauses beginning with the word "whereby" in claims 1, 10, and 12 of the '522 Patent are non-limiting. (Dkt. No. 179 at 17–19). Metaswitch contends that Mr. Bress's non-infringement opinions based on these clauses should be excluded.

Similar to claim preambles, "whereby clauses" often do not limit the scope of a claim and instead "simply express[] the intended result of a process step positively recited." *Minton v. NASD, Inc.*, 336 F.3d 1373, 1381 (Fed. Cir. 2003); *see also Texas Instruments, Inc. v. United States ITC*, 988 F.2d 1165, 1172 (Fed. Cir. 1993) ("A 'whereby' clause that merely states the result of the limitations in the claim adds nothing to the patentability or substance of the claim."). However, whereby clauses that "state[] a condition that is material to patentability" may limit the scope of the claim. *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1329 (Fed. Cir. 2005).

The whereby clauses at issue here were the subject of claim amendments during prosecution to overcome a prior art rejection. The claims originally recited "<u>alternate</u> telephony party identifier whereby the user <u>can be</u> identified in the alternate telephony service and whereby calls <u>can be</u> routed to the multi-service user by the alternate telephony service without passing through the packet-based telephony service" but were amended to require "a <u>PSTN</u> telephony party identifier whereby the user <u>is</u> identified in the PSTN and whereby calls <u>are</u> routed to the

5

multiservice user by the PSTN without passing through the packet-based telephony network." (Dkt. No. 194-10 at 3) (emphasis added). The applicant then argued that the claims were distinguishable over the prior art based on the prior art's failure to disclose "a PSTN telephony party identifier whereby the user is identified in the PSTN and whereby calls are routed to the user by the PSTN without passing through the packet-based telephony network." (*Id.* at 9).

Accordingly, the applicant represented that the whereby clauses state a condition material to patentability. Moreover, the applicant's decision to modify the claim terms from permissive ("can be") to restrictive ("is" or "are") evinces the applicant's intent to make these claim terms limiting. Accordingly, the whereby clauses limit the claims and Mr. Bress's opinions are admissible.

In the alternative, Metaswitch challenges Mr. Bress's application of the whereby clauses, arguing that Mr. Bress has improperly excluded an "E.164 number" from the scope of the term "PSTN telephony party identifier" based on a misunderstanding of what the relevant claim terms cover. (Dkt. No. 201 at 6). This is an infringement fact dispute, not a *Daubert* issue. *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. De C.V.*, 464 F.3d 1339, 1349 (Fed. Cir. 2006) ("Whether a product falls within the literal scope of a properly construed claim is a question of fact, on which we accord a jury substantial deference"). Mr. Bress's report explains his reasoning and methodology for his non-infringement opinions. *See* (Dkt. No. 194-6 at ¶ 220–31). Metaswitch is free to cross-examine Mr. Bress and attempt to rebut these opinions, but they will not be excluded.

## III. CONCLUSION

For the foregoing reasons, the relief requested in Parts D–F of Metaswitch's Motion to Strike Mr. Bress (Dkt. No. 179) is **DENIED**.

**SIGNED this 7th day of March, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE